**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTITA CASILLAS,<br><br>           Plaintiff,<br>  v.<br><br>SIX FLAGS ENTERTAINMENT CORPORATION, a Delaware corporation, d/b/a WWW.CEDARPOINT.COM,<br><br>           Defendant. | Case No. 2:25-cv-06824-CBM-PD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Declarations of Miltita Casillas and Scott J. Ferrell; Proposed Order filed concurrently herewith]<br><br>Date:      October 21, 2024<br>Time:      10:00 a.m.<br>Courtroom: 8D<br>Judge:    Hon. Consuelo B. Marshall |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     ARGUMENT ...................................................................................................1

    A.     The Court Should Exercise Specific Jurisdiction Over Defendant. ...............1

        1.     Plaintiff Has Provided the Court with Evidence that Defendant Committed an Intentional Act by Operating Its Website. ..................1

        2.     Defendant Purposefully Directs Its Activities Toward Computer Users Located in the State of California by Engaging in Online Transactions with Them. ......................................................................1

        3.     A Defendant's Use of Electronic Means to Enter the Forum State Is a Relevant Contact. ...................................................................3

        4.     Defendant's Legal Compliance Materials on Its Website Are Evidence that Defendant Targets the California Market. ...................4

        5.     If the Court Is Not Persuaded by Plaintiff's Evidence Applying *Herbal Brands*, Then the Court Should Allow Plaintiff an Opportunity to Conduct Limited Jurisdictional Discovery. ...............4

        6.     Defendant Caused Harm that It Knew Is Likely to be Suffered in California. .........................................................................................5

        7.     Plaintiff's Suit Arises Out of or Is Related to Defendant's Forum Related Activities. ................................................................8

        8.     Jurisdiction Over Defendant Is Reasonable. .....................................10

    B.     Defendant's Forum Selection Clause Argument Is Without Merit. ............11

    C.     Plaintiff Has Standing to Sue. ...................................................................11

        1.     Plaintiff Can Have Standing Even as a "Tester". .............................11

        2.     Identifiers Such as An IP Address and Geolocation Data and Browsing History Constitute a Consumer's Personal Information in California as Recognized by California Statutes, Which Supports a Reasonable Expectation of Privacy. ...................................................13

3. The Website Has Embedded the Third-Party Cookies of Numerous Data Brokers and Numerous Other Entities to Surveil Users of the Website. ........................................................................................14

D. The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code. ..........................................................................................18

1. Numerous Federal District Courts Have Recognized that Similar Third-Party Spyware Is Either a "Pen Register" or a "Trap and Trace Device". ........................................................................................18

2. The Argument that Section 638.51 of the Penal Code Should Be Interpreted to Exclude Defendant's Third-Party Cookies Because Such Cookies Copy the Content of the Communications Between the Website and Plaintiff and Other Users Is Wrong. ...........................19

E. Plaintiff's Other Claims Are Plausibly Alleged. ..........................................19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AF Holdings, LLC v. Does 1-1058,*
   752 F.3d 990 (D.C. Cir. 2014) .................................................................................7

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
   11 F.4th 972 (9th Cir. 2021) .............................................................................3, 9

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
   223 F.3d 1082 (9th Cir. 2000) ...........................................................................11

*Boschetto v. Hansing,*
   539 F.3d 1011 (9th Cir. 2008) .............................................................................2

*Brayton Purcell LLP v. Recordon & Recordon,*
   606 F.3d 1124 (9th Cir. 2010) .............................................................................5

*Briskin v. Shopify, Inc.,*
   135 F.4th 739 (9th Cir. 2025) (en banc) ...................................................2, 4, 10

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. County,*
   582 U.S. 255 (2017).........................................................................................9, 10

*Brown v. Google LLC,*
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................14

*Brown v. Google LLC,*
   685 F. Supp. 3d 909 (N.D. Cal. 2023) ..............................................................19

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)..............................................................................................8

*Calder v. Jones,*
   465 U.S. 783 (1984)......................................................................................1, 5, 6

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust,*
   867 F.3d 1093 (9th Cir. 2017) ...........................................................................12

*Commonwealth v. Biden,*
   57 F.4th 545 (6th Cir. 2023) ..............................................................................13

*Conohan v. Rad Power Bikes Inc.*,
    2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ......................................................18

*Consumers' Research v. Consumer Prod. Safety Comm'n*,
    91 F.4th 342 (5th Cir. 2024) ..........................................................................12, 13

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023)..............................................................20

*CRBN Pickleball LLC v. Pickle*,
    2024 WL 3914670 (C.D. Cal. July 18, 2024)......................................................2

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) .............................................................................2

*Eco Disc Tech. AG v. DVD Format/Logo Licensing Corp.*,
    711 F. Supp. 2d 1074 (C.D. Cal. 2010) ..........................................................4, 5

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ...........................................................................17

*Federal Election Comm'n v. Cruz*,
    596 U.S. 289 (2022)........................................................................................12

*Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*,
    592 U.S. 351 (2021)....................................................................... 2, 8, 9, 10

*Gabrielli v. Haleon US Inc.*,
    2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ............................... 17, 18, 19, 20

*Gabrielli v. Motorola Mobility LLC*,
    2025 WL 1939957 (N.D. Cal. July 14, 2025) ....................................... 2, 3, 4, 18

*Gladstone v. Amazon Web Servs., Inc.*,
    2024 WL 3276490 (W.D. Wash. July 2, 2024) ................................................7, 8

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023)..............................................................18

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)........................................................................................12

*Heiting v. FKA Distributing Co. LLC*,
    2025 WL 1430663 (C.D. Cal. May 15, 2025) ....................................................18

MEM ISO OPP'N TO MTD FAC

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) ........ 2, 3, 4, 5

*Impossible Foods Inc. v. Impossible X LLC*,
    80 F.4th 1079 (9th Cir. 2023) ................................................................9

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ...........17, 19

*In re Google RTB Consumer Privacy Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. 2022)................................................14

*In re Meta Pixel Tax Filing Cases*,
    - F. Supp. 3d -, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) .....................18, 19

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..............................................................19

*Jones v. Ford Motor Co.*,
    85 F.4th 570 (9th Cir. 2023) ................................................................17

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)..........................................................................2, 3

*Kentucky v. Yellen*,
    54 F.4th 325 (6th Cir. 2022) ................................................................13

*Langer v. Kiser*,
    57 F.4th 1085 (9th Cir. 2023) ..............................................................12

*Laufer v. Naranda Hotels, LLC*,
    60 F.4th 156 (4th Cir. 2023) ................................................................13

*Legacy Health Sys. v. Hathi*,
    2024 WL 2843034 (9th Cir. Cir. June 5, 2024)...........................................12, 13

*Lesh v. Cable News Network, Inc.*,
    2025 WL 563358 (S.D.N.Y. Feb. 20, 2025).......................................18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ..........................................................2, 5

*McGee v. International Life Ins. Co.*,
    355 U.S. 220 (1957)..........................................................................8

*Mikulsky v. Bloomingdale's LLC*,
    2025 WL 1718225 (9th Cir. June 20, 2025) ........................................................6

*Mirmalek v. Los Angeles Times Comms. LLC*,
    2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)................................................13, 18

*Moody v. C2 Educ. Systems Inc.*,
    742 F. Supp. 3d 1072 (C.D. Cal. 2024) ...........................................................18

*Nu Image, Inc. v. Does 1-23, 322*,
    799 F. Supp. 2d 34 (D.D.C. 2011) ....................................................................7

*Popa v. Microsoft Corp.*,
    - F.4th -, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ................................17, 18

*Quigley v. Guvera IP Pty., Ltd.*,
    2010 WL 5300867 (N.D. Cal. Dec. 20, 2010) (Breyer, J.) ...............................4

*Riganian v. Liveramp Holdings, Inc.*,
    - F. Supp. 3d -, 2025 WL 2021802 (N.D. Cal. July 18, 2025); ........................18

*Rodriguez v. Aquatic Sales Solutions LLC*,
    2024 WL 2804097 (C.D. Cal. May 29, 2024) (Snyder, J.) ..............................10

*Rodriguez v. Autotrader.com, Inc.*,
    762 F. Supp. 3d 921 (C.D. Cal. 2025) ...........................................................18

*Rojas v. City of Ocala, Fl.*,
    40 F.4th 1347 (11th Cir. 2022) .......................................................................13

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................1

*Shah v. Fandom, Inc.*,
    754 F. Supp. 3d 924 (N.D. Cal. 2024) .............................................................18

*Smith v. Albany Cty. Sch. Dist. No. 1 Bd. of Trustees*,
    121 F.4th 1374 (10th Cir. 2024) .....................................................................12

*Stenson Tamaddon, LLC v. United States Internal Revenue Service*,
    742 F. Supp. 3d 966 (D. Ariz. 2024) ...............................................................13

*Strike 3 Holdings, LLC v. Doe*,
    2024 WL 947864 (S.D. Cal. Feb. 14, 2024).......................................................7

*Sunday Red, LLC v. Tigeraire, Inc.*,
    2024 WL 5339390 (C.D. Cal. Dec. 13, 2024) ......................................................8

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ..........................................................1, 8

*Taylor v. Salvation Army Nat'l Corp.*,
    110 F.4th 1017 (7th Cir. 2024) ..............................................................12

*Thomas v. Papa John's Int'l, Inc.*,
    2025 WL 1704437 (9th Cir. June 18, 2025) ......................................................6

*Thomas v. Papa Johns Int'l, Inc.*,
    2023 WL 6370641 (S.D. Cal. Aug. 14, 2023) (Sabraw, C.J.), *aff'd*,
    2025 WL 1704437 (9th Cir. June 18, 2025) ......................................................6

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ......................................................17

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*,
    489 U.S. 749 (1989) ......................................................17

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..............................................................2, 3, 4

*Will Co., Ltd. v. Lee*,
    47 F.4th 917 (9th Cir. 2022) ..............................................................4, 5

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*,
    2024 WL 838707 (9th Cir. 2024) ......................................................3

*Zarif v. Hwareh.com, Inc.*,
    2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ..............................................1, 5, 18

*Zeichner v. Nord Security Inc.*,
    2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) ......................................................15

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*
    952 F. Supp. 1119 (W.D. Pa. 1997) ......................................................2

**California Cases**

*Friddle v. Epstein*,
    16 Cal. App. 4th 1649 (1993) ......................................................7

*Hill v. National Collegiate Athletic Ass'n*,
   7 Cal.4th 1 (1994) ...................................................................................13

*King v. U.S. Bank National Ass'n*,
   53 Cal. App. 5th 675 (2020), *rev. denied,* No. S264308 (Cal. Nov. 10,
   2020) .........................................................................................................8

*Rattagan v. Uber Techs., Inc.*,
   17 Cal.5th 1 (2024) .................................................................................15

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) .............................................................................17

*Schroder v. Auto Driveway Co.*,
   11 Cal. 3d 908 (1974) ...............................................................................8

**U.S. Constitution**

Article III .......................................................................................................12

First Amendment ...........................................................................................12

**Federal Statutes**

ADA ...............................................................................................................12

Title III of the Omnibus Crime Control and Safe Street Act of 1968, Pub.
   L. No. 90-351, 82 Stat. 197 (1968) .......................................................19

**California Statutes**

Civil Code
   § 1798.99.80(a) ........................................................................................6
   § 1798.99.80(c) ........................................................................................6
   § 1798.100 *et seq.* ...................................................................................4
   § 1798.100(a) ........................................................................................15
   § 1798.100(a)(1)-(3) .............................................................................15
   § 1798.100(b) ........................................................................................15
   § 1798.140 ........................................................................................6, 14
   § 1798.140(v)(1)(A) .........................................................................13, 14
   § 1798.140(v)(1)(F) ..........................................................................13, 14
   § 1798.140(v)(1)(G) .........................................................................13, 14
   § 1798.140(ae)(1)(C) .........................................................................7, 13

§ 1798.140(w) ...........................................................................................7
§ 1798.175 ...............................................................................................13
Division 3 Part 4 Title 1.81.48...............................................................6
Consumer Privacy Act of 2018 ....................................................... *passim*
California Privacy Rights Act of 2020 ....................................................4

Penal Code
§ 630 *et seq.* ............................................................................................6
§ 631(a) .........................................................................................19, 20
§ 637.2(a) .................................................................................................7
§ 637.2(c) .................................................................................................7
§ 638.50(b) & (c) ...................................................................................19
§ 638.51 ......................................................................10, 13, 18, 19
§ 1546 *et seq.* ........................................................................................13
§ 1546(d) (2015) ....................................................................................13
§ 1546(h) (2015) ....................................................................................13
§ 1546.1(a)(1) (2015) .............................................................................13
§ 1546.1(b) (2015) .................................................................................13
§ 1546.4(a) (2015) .................................................................................13
California Electronic Communications Privacy Act ...........................13
California Invasion of Privacy Act ....................................................6, 13

**Federal Rules**

Local Rule 7-3 .........................................................................................11

**California Regulations**

11 C.C.R.
§ 7000(a) ................................................................................................15
§ 7001(q) ................................................................................................15
§ 7012.................................................................................................15, 16
§ 7012(c) ................................................................................................15
§ 7012(c)(1).............................................................................................15
§ 7012(d) ................................................................................................16

**Other Authorities**

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed.
    Prac. & Proc. Juris. (3d ed. June 2024 Update)
§ 3531.5.............................................................................................11, 12
n.61 .........................................................................................................12
n.70 .........................................................................................................11

1

n.73 ................................................................................................................ 11

https://cppa.ca.gov/data_broker_registry/ (last visited Sept. 24, 2025) ................... 14

https://www.brennancenter.org/our-work/research-reports/closing-data-
broker-loophole (last visited Sept. 24, 2025) ........................................................ 7

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. ARGUMENT

**A.     The Court Should Exercise Specific Jurisdiction Over Defendant.**

**1.     Plaintiff Has Provided the Court with Evidence that Defendant Committed an Intentional Act by Operating Its Website.**

"Operating a website is an intentional act." *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *3 (S.D. Cal. Feb. 13, 2025); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 741 (N.D. Cal. 2023) ("It is undisputed that Home Depot operates its own website and chat function, and thus, Swarts's claims satisfy the first element. A defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'") (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004)) (For purposes of *Calder* test, "intent" is construed as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."). Thus, the "intent to accomplish a result or consequence of an intentional act" is irrelevant for purposes of the first element of showing an intentional act in *Calder v. Jones*, 465 U.S. 783 (1984).

The website at:    https://www.cedarpoint.com/ (the "Website") is operational. (Ferrell Decl. ¶ 2 & Ex. 1.)  Such act is intentional.  Indeed, Defendant does not challenge the first prong of the *Calder* effects test in the instant Motion.  (Def.'s Mem. at 6:1-2.)

**2.     Defendant Purposefully Directs Its Activities Toward Computer Users Located in the State of California by Engaging in Online Transactions with Them.**

The Website allows consumers to make online transactions for the purchase of tickets and season passes.  (Ferrell Decl. ¶ 2 & Ex. 1.)  The season passes are applicable to 40+ amusement parks including amusement parks located in California.  *Id.*  ¶¶ 2, 5 & Exs. 1, 4.  The highly interactive and commercial nature of the Website supports a finding of purposeful direction under the sliding-scale test of website interactivity originally

recognized in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), which has been followed by the Ninth Circuit.  *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092-94 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011) ("We have followed *Zippo*.").  In *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008), the Ninth Circuit, citing *Zippo*, stated, "'In *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997), we discussed with approval a sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect.'"

Notably, the Ninth Circuit has recently clarified via its en banc opinion in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc), that differential targeting is not required to satisfy the "express aiming" prong of the specific personal jurisdiction test. *Id.* at 758.

As *Briskin* explains, even if a commercial website cultivates a nationwide audience for commercial gain, that does not preclude a finding of express aiming toward a forum state when its contacts are its own choice (as is the case here). *Id.*; *CRBN Pickleball LLC v. Pickle*, 2024 WL 3914670, at *6 (C.D. Cal. July 18, 2024).

The U.S. Supreme Court has upheld the assertion of jurisdiction over a defendant who has "deliberately 'reached out beyond' its home" "by … 'exploi[ting] a market' in the forum State." *Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  "If a defendant chooses to conduct 'a part of its general business' in a particular forum, it is fair to subject that defendant to personal jurisdiction in that forum." *Herbal Brands*, 72 F.4th at 1093 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 (1984)).

The fact that Plaintiff did not purchase anything via the Website does not render *Briskin* as distinguishable. *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *8 (N.D. Cal. July 14, 2025) ("Motorola attempts to distinguish *Briskin* by arguing that [plaintiff] does not allege that he purchased any goods or services from Motorola in

California….The Court does not read the express aiming requirement so narrowly, however….").

The precise amount of sales to Californians is inconsequential.  Even if the amount of sales is small, Internet sales still satisfy the express aiming requirement of the purposeful direction/purposeful availment prong.  Notably, the Ninth Circuit recently held:

> "The outcome of the express-aiming inquiry ***does not depend on the number of sales made to customers in the forum***. Drawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law.  If one sale were not enough to establish that a defendant expressly aimed its conduct at a forum, we would face the difficult question of how many sales would suffice. The same challenges would exist if we were to attempt to craft a rule based on sales to the forum as a percentage of a defendant's total sales.
>
> Instead of taking on an arbitrary line-drawing task, we require only that the sale must occur in the defendant's ***regular course of business***. Consistent with *Keeton*, our holding distinguishes between a truly isolated sale and a genuine attempt to serve the market."

*Herbal Brands, Inc.*, 72 F.4th at 1095 (internal citation omitted and emphasis added).[1] *Herbal Brands* is constitutionally sound.  Indeed, ***certiorari was denied by the U.S. Supreme Court***.

### 3. A Defendant's Use of Electronic Means to Enter the Forum State Is a Relevant Contact.

"[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, ***goods***, mail, ***or some other means***—is certainly a relevant contact." *Walden v. Fiore*, 571

---

[1] *See also Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021) ("As *Keeton* demonstrates, there is no 'small percentage of sales' exception to the purposeful direction principles discussed herein."); *Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*, 2024 WL 838707, at *1 (9th Cir. 2024) ("the percentage of sales [to California] is not the relevant inquiry").

U.S. 277, 285 (2014) (emphasis added and citation omitted).  The Ninth Circuit has held that a defendant's conduct satisfied the "express aiming" factor reasoning that its use of "electronic means" established an "entry into the [forum] state" and "certainly [was] a relevant contact."  *Briskin*, 135 F.4th at 756-57.

### 4.    Defendant's Legal Compliance Materials on Its Website Are Evidence that Defendant Targets the California Market.

Defendant is well aware that its Website's customers are Californians given the legal compliance disclosures on such Website.  *See Will Co., Ltd. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022) (holding that legal compliance materials on a website is "evidence of [defendants'] subjective intent to target the U.S. market"); *Motorola*, 2025 WL 1939957, at *8 ("[Defendant's] specific identification of California privacy law in its website Privacy Statement thus serves as evidence of express aiming.") (citing *Will*); *Quigley v. Guvera IP Pty., Ltd.*, 2010 WL 5300867, at *4 (N.D. Cal. Dec. 20, 2010) (Breyer, J.) (holding that fact that defendant's website "established a California-specific privacy policy in order to comply with California law" showed that it "expressly sought consumers in California").

The Website contains a hyperlink named "Privacy Policy," which takes the user to Defendant's online Privacy Policy, which, in turn, instructs California consumers to visit a hyperlink at the URL address at: https://www.cedarpoint.com/ccpa, which is a California-specific document that addresses the rights of Californians under the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, as amended by the California Privacy Rights Act of 2020.  (Ferrell Decl. ¶ 7 & Exs. 5-6.)

### 5.    If the Court Is Not Persuaded by Plaintiff's Evidence Applying *Herbal Brands*, Then the Court Should Allow Plaintiff an Opportunity to Conduct Limited Jurisdictional Discovery.

If the Court is not persuaded by Plaintiff's evidence applying *Herbal Brands*, then the Court should allow Plaintiff an opportunity to conduct limited jurisdictional discovery. *Eco Disc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093

(C.D. Cal. 2010) ("Discovery is appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary").

Here, Plaintiff has presented at least a colorable basis that specific personal jurisdiction exists. Although the Ninth Circuit held in *Herbal Brands* that "[t]he outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum," 72 F.4th at 1095, it also noted, "Whether a sale occurs in a defendant's regular course of business is a case-specific question that may turn on factors such as … ***the defendant's total volume of online sales including sales outside the forum***," *id.* at 1094 (emphasis added). Thus, if the Court is not persuaded that sales to Californians occur via its Website in Defendant's regular course of business, then Plaintiff should be afforded the opportunity to conduct discovery as to the total volume of Defendant's online sales of tickets and/or season passes either purchased by California consumers on the Website itself or in which the Website served as the referral URL for such purchase made by California consumers via a related commercial website owned or operated by Defendant such as:  https://www.knotts.com/ relating to an amusement park located in California. (Ferrell Decl. ¶ 4.)

## 6.    Defendant Caused Harm that It Knew Is Likely to be Suffered in California.

"The third prong of the *Calder* effects test asks whether the defendant caused harm that it knew is likely to be suffered in the forum state." *Zarif*, 2025 WL 486317, at *5. "With regard to the third element, '[a] defendant causes harm in a particular forum when the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum.'" *Will Co., Ltd.*, 47 F.4th at 926 (quoting *Mavrix Photo*, 647 F.3d at 1231). "[T]his element does not require that the 'brunt' of the harm be suffered in the forum, ... and ... may be established even if 'the bulk of the harm' occurs outside the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (citation omitted).

In *Thomas v. Papa Johns Int'l, Inc.*, 2023 WL 6370641 (S.D. Cal. Aug. 14, 2023) (Sabraw, C.J.), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025), the court addressed the third element of the *Calder* "effects" test in addressing a similar claim under the California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.*, as follows:

> "The final element of the 'effects' test is whether the defendant's intentional acts caused harm that the defendant knows is likely to be suffered in the forum state. Here, there is no dispute Defendant's website is accessible to California residents, and that California residents order and receive Defendant's products in California through Defendant's website. There is also no dispute that Defendant is aware that the Session Replay Code is embedded into its website, and that the harm alleged in the case would thereby be suffered in California by California residents using the website. Accordingly, the third element of the "effects" test is also met, and with it, the purposeful direction requirement."

2023 WL 6370641, at \*4. *Thomas* was recently affirmed by the Ninth Circuit. *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at \*1 (9th Cir. June 18, 2025). *Thomas* provides important guidance here. *See also Mikulsky v. Bloomingdale's LLC*, 2025 WL 1718225, at \*1 (9th Cir. June 20, 2025).

Here, Plaintiff has provided evidence that the Website is accessible to California residents. (Ferrell Decl. ¶ 6.) In addition, Plaintiff's investigation via a computer expert has detected: (i) multiple spyware beacons, embedded into its Website that are being used to track Website users via their IP addresses without their consent; and (ii) spyware of multiple data brokers[2] registered with the California Privacy Protection Agency who

---

[2] Under California's law regulating data brokers, a "'Data broker' means a business that knowingly collects and sells to third parties the ***personal information*** of a consumer with whom the business does not have a direct relationship." (Civ. Code § 1798.99.80(c) (emphasis added).) Notably, for purposes of Title 1.81.48 of Part 4 of Division 3 of the California Civil Code, which imposes data broker registration requirements under California law, "[t]he definitions in Section 1798.140 shall apply unless otherwise specified in this title." (Civ. Code § 1798.99.80(a).) Thus, the definition of "personal information" applicable to the CCPA applies to section 1798.99.80(c) as well.

According to the esteemed Brennan Center for Justice, data brokers are "the main purveyors of surveillance capitalism" that "collect, assemble, and analyze personal

Continued on the next page

MEM ISO OPP'N TO MTD FAC

freely admit to collecting the "precise geolocation"[3] of California consumers. (Ferrell Decl. ¶ 9.) Thus, Defendant and its partners use "geolocation services, which enable anyone to estimate the location of Internet users based on their IP addresses." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014) (citing *Nu Image, Inc. v. Does 1-23, 322*, 799 F. Supp. 2d 34, 41 (D.D.C. 2011) (noting that "[geolocation] services can place a user no farther away than a city that borders the user's actual location")). It is well-established that geolocation technology can trace a user's IP address to a point of origin within a locality, which is how producers of copyrighted works downloaded from the Internet are able to identify defendants for copyright infringement. *Strike 3 Holdings, LLC v. Doe*, 2024 WL 947864, at *2 (S.D. Cal. Feb. 14, 2024).

Thus, Defendant is surely well aware that its installation of one or more third-party spyware cookies embedded into its Website are being used to track California residents, and that the harm to their privacy interest (a dignitary injury) would be suffered by those individuals in California.[4]

Defendant knew that the cookie makers would collect personal information when Defendant installed or allowed the installation of the relevant code on its Website. Such software in the Website is designed for the purpose of de-anonymizing and tracking visitors of the Website. The software design is not a mistake. *See Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *11 (W.D. Wash. July 2, 2024) ("The SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing

---

[3] information to create detailed profiles of individuals, which they then sell to "financial institutions and insurance firms….Advertising companies… predatory loan companies, stalkers, and scammers…foreign actors…and law enforcement and other government agencies including the FBI and the IRS."). *See* https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole (last visited Sept. 24, 2025).

[3] As defined by the CCPA, "'Precise geolocation' means any data that is derived from a device and that is used or intended to be used to locate a consumer within a geographic area that is equal to or less than the area of a circle with a radius of 1,850 feet, except as prescribed by regulations." (Cal. Civ. Code § 1798.140(w).) "A consumer's precise geolocation" constitutes "Sensitive personal information" under the CCPA. (Cal. Civ. Code § 1798.140(ae)(1)(C).)

[4] ***Any*** invasion of privacy is an affront to dignity. *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("Any invasion of privacy involves an affront to human dignity"). Indeed, the statutory damages remedy in Penal Code § 637.2(a) is available regardless of actual damages. (Cal. Penal Code § 637.2(c).)

communications between its customers (like Capital One) and consumers or other entities."). Defendant knew this before agreeing to install and allow such third party spyware software to exist and operate on its Website. "'[I]ntent,' in the law of torts, denotes not only those results the actor desires, but also those consequences which he [or she] knows are substantially certain to result from his [or her] conduct.'" *King v. U.S. Bank National Ass'n*, 53 Cal. App. 5th 675, 712 (2020), *rev. denied,* No. S264308 (Cal. Nov. 10, 2020) (quoting *Schroder v. Auto Driveway Co.*, 11 Cal. 3d 908, 922 (1974)).

If Defendant violated either federal or California law by allowing a third party to surreptitiously obtain personal information during visitor communications with its Website, then Defendant would have known that its Website users in California might sue to vindicate their privacy interest under such statute. *Cf. Sunday Red, LLC*, 2024 WL 5339390, at *4 ("In the trademark infringement context, courts typically find this [third] prong satisfied where a plaintiff alleges that a defendant knew of a potential dispute connected to the forum state.") (citation omitted).

Thus, the Court has sufficient grounds to find based on Plaintiff's evidence that Defendant was aware that the spyware beacons embedded on its Website were recording the IP addresses and other personal information of California visitors, "which could foreseeably cause harm in California." *Swarts*, 689 F. Supp. 3d at 741.

## 7.   Plaintiff's Suit Arises Out of or Is Related to Defendant's Forum Related Activities.

"Jurisdiction is proper … where contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)) (emphasis in original). But, causation is not required to satisfy the second prong of the test. The U.S. Supreme Court merely requires "a 'connection' between a plaintiff's suit and a defendant's activities." *Ford*, 592 U.S. at 361 (citation omitted). "None of [the Supreme Court's] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation

will do." *Id.* at 362.  The U.S. Supreme Court's "most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" *Id.* (quotation omitted and emphasis in original).  "The first half of that standard asks about causation; ***but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing*** …. ***[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation***—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.* (emphasis added).  In other words, there must be "'an affiliation between the forum and the underlying controversy, principally [an] ***activity*** or an ***occurrence*** that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id.* at 360 (emphasis added) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. County*, 582 U.S. 255, 262 (2017)).

The Ninth Circuit likewise has observed that a causal relationship between the contacts and the claims is not always required.  *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1094 (9th Cir. 2023) ("But the nature of [the contacts] need not be causal...."); *id.* at 1093 (describing *Ford Motor Co.* as "the Supreme Court's most definitive pronouncement on the 'arising out of or related to' prong of the specific jurisdiction framework"); *Ayla, LLC*, 11 F.4th at 983 n.5 ("[O]ur precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement.").

Here, the present action arises out of or relates to Defendant's forum related activities.  The FAC alleges that Defendant has deployed spyware on its Website that installs tracking spyware without consent.  (FAC ¶¶ 19-138.)  The Website sent to Plaintiff's computer's browser in California "HTTP" responses with instructions to transmit Plaintiff's communications to digitally fingerprint Plaintiff.  Thus, the clear import of the FAC is that Plaintiff's claim relates to the Website itself.

Plaintiff has provided evidence that Plaintiff used the Website before the instant action was filed.  (Casillas Decl. ¶ 2.)  In addition, Plaintiff visited the Website to learn about the Website's services. *Id.*  Plaintiff's privacy-related injury to her dignity is caused

by and related to the Website's marketing of its services. If the Website wasn't designed to attract consumers like Plaintiff to browse and shop on its Website (and/or related websites), then Plaintiff's injury never would have occurred. Simply put, if Defendant had not engaged in the alleged wrongdoing at issue herein via its Website made available to California residents, Plaintiff's claim under section 638.51 of the Penal Code or other provisions of law would not have arisen. This is ***not*** a case in which the dispute in this case had nothing to do with Defendant's contacts with the state of California. Thus, a "substantial connection" exists between Plaintiff's claims and Defendant's forum contacts via its Website. "[T]he place of a plaintiff's injury and residence" "***may be relevant*** in assessing the link between the defendant's forum contacts and the plaintiff's suit— including its assertions of who was injured where." *Ford*, 592 U.S. at 371 (emphasis added). Plaintiff brought suit "in the most natural State—based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that [took] place' there." *Id.* at 370 (quoting *Bristol-Myers*, 582 U.S. at 262). *Ford* should be followed here.

Plaintiff's claim relates to Defendant's conduct in operating the Website, which sells physical goods to California residents through the Website. *Rodriguez v. Aquatic Sales Solutions LLC*, 2024 WL 2804097, at \*5 (C.D. Cal. May 29, 2024) (Snyder, J.) ("The Court finds that plaintiff's claims 'relate to' defendant's conduct in operating the Website *and* its sales of physical goods to California residents through the Website.") (emphasis in original).

Defendant's "installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries. [Plaintiff's] claims therefore satisfy the second requirement for specific jurisdiction." *Briskin*, 135 F.4th at 760.

### 8.    Jurisdiction Over Defendant Is Reasonable.

Once the first two prongs of the personal jurisdiction test are met by the plaintiff, the burden falls on the defendant to show that the third prong has not been met. That is,

the defendant must show that the exercise of jurisdiction is unreasonable, and must put on a "compelling case." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).  Defendant has failed to attempt to satisfy ***its*** heavy burden as to the third prong of the personal jurisdiction test.  Defendant has a California registered agent. (Ferrell Decl. ¶ 8 & Exs. 7-8.)

**B.    Defendant's Forum Selection Clause Argument Is Without Merit.**

Defendant's "alternative" request to transfer this action based on a forum selection clause is without merit.  Defendant failed to comply with Local Rule 7-3 by conferring about it.  (Ferrell Decl. ¶ 10.)  The Notice of Motion also does not even refer to any transfer request.  Moreover, there is no evidence that Defendant provided actual or inquiry notice of its Terms of Use containing such forum selection clause quoted in the instant Motion to Plaintiff during her visits to the Website.  Although Defendant cites paragraph 15 of the FAC, that refers to the Website's Privacy Policy as opposed to its Terms of Use.  There is no evidence that the Website's Privacy Policy contains any forum selection clause.

**C.    Plaintiff Has Standing to Sue.**

**1.    Plaintiff Can Have Standing Even as a "Tester".**

Although Defendant argues that Plaintiff, a "tester," cannot have standing to sue because she suffered a self-inflicted injury, (Def.'s Mem. at 19:11), a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing.  It is clear, however, that no rigid lines are drawn on this basis."  13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. June 2024 Update) ("Wright, Miller & Cooper").  That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury."  *Id.* § 3531.5 & n.70.  "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***."  *Id.* at n.70 (emphasis added) (citation omitted); *id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).

Such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Wright, Miller & Cooper, *supra*, § 3531.5 & n.61; *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*") (citing *Havens*), *cited in Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023) (holding that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis"); *id.* at 1096 (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"). *Havens* continues to be recognized as supporting tester standing even by the U.S. Supreme Court itself. *See Federal Election Comm'n v. Cruz*, 596 U.S. 289, 296-97 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

In *Cruz*, the federal Government argued that Senator Ted Cruz and other plaintiffs lacked "standing because their injuries were 'self-inflicted,'"[5] *id.* at 296, and asked the Supreme Court "to recognize an exception to traceability for injuries that a party purposely incurs," *id.*, but the Supreme Court unequivocally rejected such challenge:

> "We have never recognized a rule of this kind under Article III. To the contrary, *we have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred*."

*Id.* at 297 (emphasis added) (citing *Havens Realty Corp.*, 455 U.S. at 374). Numerous federal circuit courts including the Ninth Circuit have followed *Cruz* for such proposition. *Legacy Health Sys. v. Hathi*, 2024 WL 2843034, at *1 (9th Cir. Cir. June 5, 2024) (citing *Cruz*).[6]

---

[5] Senator Cruz and his campaign both stipulated that their "sole and exclusive motivation" for violating the campaign-finance restriction in federal law was to create a factual basis for challenging such restriction under the First Amendment. 596 U.S. at 296.

[6] *See, e.g.*, *Smith v. Albany Cty. Sch. Dist. No. 1 Bd. of Trustees*, 121 F.4th 1374, 1378 (10th Cir. 2024); *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024); *Consumers' Research v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 351 (5th

Continued on the next page

**2.    Identifiers Such as An IP Address and Geolocation Data and Browsing History Constitute a Consumer's Personal Information in California as Recognized by California Statutes, Which Supports a Reasonable Expectation of Privacy.**

Defendant's contention that Plaintiff lacked a reasonable expectation of privacy is wrong.[7]  Over the past decade, California law has expressly recognized a legally protected privacy interest in IP addresses.   For example, in 2015, California's Legislature enacted California's Electronic Communications Privacy Act ("CECPA"), Cal. Penal Code § 1546 *et seq.*, which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception.  (Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of CECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial).

More recently, in 2018, the California Legislature enacted into law the CCPA,[8] which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," "Geolocation data,"[9] and "Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website application, or advertisement," all constitute a

---

Cir. 2024); *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 170-171 (4th Cir. 2023); *Commonwealth v. Biden*, 57 F.4th 545, 555-56 (6th Cir. 2023); *Kentucky v. Yellen*, 54 F.4th 325, 345-46 (6th Cir. 2022); *Rojas v. City of Ocala, Fl.*, 40 F.4th 1347, 1351 (11th Cir. 2022); *Stenson Tamaddon, LLC v. United States Internal Revenue Service*, 742 F. Supp. 3d 966, 982-83 (D. Ariz. 2024).

[7] It is well established that a reasonable expectation of privacy is a concept derived from the common law.  *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 27 (1994) (referring to "the common law's insistence on objectively reasonable expectations of privacy").  It is not a required element of the ***statutory*** cause of action at issue herein for violation of section 638.51.

[8] Notably, the CCPA does not preempt CIPA. *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (citing Cal. Civ. Code § 1798.175) ("the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control").

[9] "A consumer's precise geolocation" constitutes "Sensitive personal information" under the CCPA.  (Civ. Code § 1798.140(ae)(1)(C).)

consumer's "personal information," (Civ. Code § 1798.140(v)(1)(A), (F), (G)).    The CCPA's recognition supports a reasonable expectation of privacy in such personal information.    *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information ***such as plaintiff's IP address***….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy.    Not so.    First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Civ. Code § 1798.140); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1077-79 (N.D. Cal. 2021) (allegations that Google collected a "profile of users" "collected secretly … without any notice to users" via "fingerprinting techniques, system data, and geolocation data" sufficient to plead a reasonable expectation of privacy because "users' Internet activity" "may reveal" "a user's private plans for the future (e.g., purchasing of an engagement ring)" and plaintiffs "could have reasonably assumed that defendant "could have reasonably assumed that Google would not receive their data … based on Google's representations").

The defendant's representations in *Brown* that led the plaintiffs therein to believe that they could manage their privacy, *Brown*, 525 F. Supp. 3d at 1078, are no different than the misleading CMP at issue herein.  (FAC ¶¶ 131-137.)

**3.    The Website Has Embedded the Third-Party Cookies of Numerous Data Brokers and Numerous Other Entities to Surveil Users of the Website.**

The Website has embedded the software code of numerous data brokers registered with the California Privacy Protection Agency, *see* https://cppa.ca.gov/data_broker_registry/ (last visited Sept. 24, 2025), to collect ***personal information*** from Website users via software code embedded into the Website.  (FAC ¶¶ 36-78.)    At least three data brokers acknowledge in the data broker registry for the California Privacy Protection Agency that they collect the precise geolocation of

consumers.  (FAC ¶¶ 56, 67, 75.)  The reason why such data brokers (and other third party cookie developers) have embedded their code on the Website so that their third-party cookies are downloaded onto the devices and browsers of Website visitors and stored there is because they are harvesting visitor data, building profiles of consumers, and monetizing "segmented" audiences via targeted advertising and marketing campaigns. Indeed, Defendant's California Consumer Privacy Act Notice states, "We do share your personal information to process for the purpose of targeted advertising."  (FAC ¶¶ 31, 33.)

"A duty to disclose a material fact can arise if … it is imposed by statute…." *Zeichner v. Nord Security Inc.*, 2024 WL 4951261, at *6 (N.D. Cal. Dec. 2, 2024) (quoting *Rattagan v. Uber Techs., Inc.*, 17 Cal.5th 1, 40 (2024)).  Here, the CCPA and its regulations imposed upon Defendant a statutory duty to disclose material facts about its collection of personal information from California consumers who used the Website to avoid misleading such consumers about the nature of its personal information collection practices on the Website in both October 2024 and September 4, 2025 (during Plaintiff's visits to the Website).  Defendant was required to provide a "Notice at Collection" of personal information in compliance with the CCPA, (Cal. Civ. Code § 1798.100(a)(1)-(3)), and California's regulation at 11 C.C.R. § 7012 at that time, which are part of the California Consumer Privacy Act Regulations.  11 C.C.R. § 7000(a).  Such Regulations define "Notice at Collection" to mean "the notice given by a business to a consumer at or before the point at which a business collects personal information from the consumer as required by Civil Code section 1798.100, subdivisions (a) and (b), and specified in these regulations."  11 C.C.R. § 7001(q).

Section 7012 provides, "The Notice at Collection shall be made readily available where consumers will encounter it at or before the point of collection of any personal information."  11 C.C.R. § 7012(c).  Such regulation provides an "[i]llustrative example" as follows:  "When a business collects consumers' personal information online, it may post a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is collected."  11 C.C.R. § 7012(c)(1).

Section 7012 provides, "If a business does not give the Notice at Collection to the consumer at or before the point of collection of their personal information, the business shall not collect personal information from the consumer." 11 C.C.R. § 7012(d).

In October 2024, Plaintiff visited the Website to browse it. (FAC ¶ 125.) At the time of Plaintiff's use, there was no cookie banner otherwise known as a consent management platform ("CMP") displayed at the outset of her visit to the Website notifying Plaintiff about what categories of cookies would be attached to Plaintiff's browser and computer device resulting from her use of the Website. (FAC ¶ 126.) Defendant failed to provide a Notice at Collection in accordance with the CCPA during Plaintiff's October 2024 visit. (FAC ¶ 127.) Such violations of the CCPA constitute material omissions by Defendant arising from a statutorily-prescribed duty. During Plaintiff's visit to the Website, third party cookies began to surreptitiously collect information about Plaintiff's device and Plaintiff's interactions with the Website the moment that Plaintiff landed on the Website. (FAC ¶ 130.) Because of the absence of a "Notice at Collection" on the homepage of the Website during her visit, as a California resident, Plaintiff reasonably relied upon the absence of such Notice at Collection to indicate that the Website was not collecting, using, or sharing Plaintiff's personal information with any third parties during such visit. (FAC ¶ 129.) This affected Plaintiff's use of the Website in terms of her browsing history. Unbeknownst to her, Plaintiff's use of the Website including her browsing history were recorded by third-party cookies and shared with third-party cookie developers whose third-party cookies and spyware were embedded onto the Website and downloaded onto Plaintiff's device and browser upon her visiting the Website.

Although Plaintiff re-visited the Website in September 2025, encountered a CMP that provided her with the option to "Deny Non-Essential" cookies, and made such selection, Plaintiff's investigation has determined that the Website is misconfigured to allow such non-essential third-party cookies to function despite the user's selection. (FAC ¶¶ 131-137.)

Defendant's violation of its statutory obligation to disclose its personal information gathering practices via a Notice at Collection and its deceptive representation on its CMP are both highly offensive to a reasonable person, which support Plaintiff's position that she was harmed by Defendant's conduct, which deprived her of the ability to control personal information regarding her digital activity and profile, which federal courts have treated as enough to show a concrete injury to a right to privacy. *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985) ("secret monitoring [of telephone calls] denies the speaker an important aspect of privacy of communication –the right to control the nature and extent of firsthand dissemination of his statements"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (holding that "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person'") (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Process*, 489 U.S. 749, 763 (1989)), *cert. denied*, 141 S. Ct. 1684 (2021); *Eichenberger*, 876 F.3d at 983 ("the Supreme Court has noted that 'both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person"); *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023) ("With respect to constitutional injury-in-fact, the relevant law is settled. A statute that codifies a common law privacy right 'gives rise to a concrete injury sufficient to confer standing.'  And this court has consistently found that '[v]iolations of the right to privacy have long been actionable at common law.'") (internal citation omitted); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *5-*8 (N.D. Cal. Aug. 29, 2025) ("The Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion[ LLC v. Ramirez*, 594 U.S. 413 (2021)].").

To the extent that Defendant relies upon *Popa v. Microsoft Corp.*, - F.4th - , 2025 WL 2448824 (9th Cir. Aug. 26, 2025), in its Reply to argue that Plaintiff lacks standing to sue, *Popa* is distinguishable for the same reasons explained in *Haleon*.  For example, the plaintiff in *Popa* "did not challenge the storage and/or transmission of cookies…." *Haleon*, 2025 WL 2494368, at *7.  Thus, the nature of the privacy invasion was far more

serious therein just as it is serious here unlike in *Popa* whereby the "technology was not alleged to track anything beyond [the plaintiff's] interactions with the website she chose to visit., and the information gathered was only alleged to be used by the owner of that website." *Id.* As was the case in *Haleon*, the tracking cookies "are capable of tracking [users'] browser[s] across other sites and building up a profile of [users'] interests." *Id.* at *8. That is unlike the alleged harm at issue in *Popa*.

**D.   The FAC Sufficiently Alleges a Violation of Section 638.51 of the Penal Code.**

**1.   Numerous Federal District Courts Have Recognized that Similar Third-Party Spyware Is Either a "Pen Register" or a "Trap and Trace Device".**

In recent years, there are currently at least ***thirteen*** different federal district court decisions that have comprehensively explained that third-party tracking software like what is alleged in the FAC can constitute either a pen register or a trap and trace device under § 638.51 of the Penal Code. *See, e.g.*, *Haleon*, 2025 WL 2494368, at *4-*8, *11-*12; *In re Meta Pixel Tax Filing Cases*, - F. Supp. 3d -, 2025 WL 2243615, at *2-*6 (N.D. Cal. Aug. 6, 2025); *Riganian v. Liveramp Holdings, Inc.*, - F. Supp. 3d -, 2025 WL 2021802, at *11-*12 (N.D. Cal. July 18, 2025); *Motorola*, 2025 WL 1939957, at *11-*12; *Heiting v. FKA Distributing Co. LLC*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6-*7 (C.D. Cal. Apr. 3, 2025); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358, at *3-*7 (S.D.N.Y. Feb. 20, 2025); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11-*12 (S.D. Cal. Feb. 13, 2025); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929-30 (C.D. Cal. 2025); *Mirmalek v. Los Angeles Times Comms. LLC*, 2024 WL 5102709, at *3-*5 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928-33 (N.D. Cal. 2024); *Moody v. C2 Educ. Systems Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

**2.**     **The Argument that Section 638.51 of the Penal Code Should Be Interpreted to Exclude Defendant's Third-Party Cookies Because Such Cookies Copy the Content of the Communications Between the Website and Plaintiff and Other Users Is Wrong.**

Plaintiff anticipates that Defendant shall argue in its Reply that Plaintiff's cause of action predicated upon a violation of section 638.51 of the Penal Code cannot state a viable cause of action because: (1) the statutory definition of both "pen register" and "trap and trace device" exclude the "contents of a communication," in section 638.50(b) & (c) of the Penal Code; and (2) the FAC implies that such contents of a communication were recorded. Such precise argument has been expressly rejected by at least two federal district courts recently. *In re Meta Pixel Tax Filing Cases*, 2025 WL 2243615, at *4-*6; *Haleon*, 2025 WL 2494368, at *12. Such decisions are persuasive.

**E.     Plaintiff's Other Claims Are Plausibly Alleged.**

Plaintiff's statutory standing analysis set forth above substantially overlaps with Defendant's arguments seeking the dismissal of the remainder of the claims pled in the FAC with limited exceptions addressed below.

First, Defendant's contention that the claims based on the violations of the Wiretap Act and section 631(a) must be dismissed because a person's browsing history is record information, (Def.'s Mem. at 13:18-19), and not the contents of a communication is wrong. *Haleon*, 2025 WL 2494368, at *11 ("descriptive URLs … constitute 'contents'"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023). Plaintiff's browsing history is information that is "not like the 'outside of an envelope,' revealing the address and name of the recipient, but instead the contents of a letter." *Id.* at 936 (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) and citing *In re Facebook*, 956 F.3d at 605 (holding that "full-string detailed URL[s]" are distinct from information discussed in *In re Zynga Privacy Litig.*) (noting that "resulting URLs could divulge a user's personal interests, queries, and habits on third-party websites").

Second, Defendant's assumption that the fourth clause of section 631(a) imposes an "abetting" legal standard, (Def.'s Mem. at 15:13; 15:26), is wrong because the fourth clause of section 631(a) omits the word "abet". *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023).

Third, the Court should rely upon the persuasive reasoning of *Haleon*, *supra*, explaining why similar claims alleging intrusion upon seclusion, invasion of privacy, violation of section 631(a), fraud, and unjust enrichment were not subject to dismissal. 2025 WL 2494368, at *8-*15.


Dated:  September 30, 2025                    PACIFIC TRIAL ATTORNEYS, P.C.

                                             By: */s/ Scott J. Ferrell*
                                             Scott. J. Ferrell
                                             Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,999 words, which complies with the word limit of L.R. 11-6.1.

Dated:  September 30, 2025

                                        */s/ Scott J. Ferrell*
                                        Scott J. Ferrell