1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

MILTITA CASILLAS,

Case No.:  2:25-cv-6824-CBM-PD

12

Plaintiff,

13

v.

**ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

14

SIX FLAGS ENTERTAINMENT CORPORATION, a Delaware corporation, d/b/a WWW.CEDARPOINT.COM,

15

16

Defendant.

17

18    The matter before the Court is Defendant Six Flags Entertainment

19   Corporation d/b/a www.cedarpoint.com's ("Defendant's") Motion to Dismiss

20   Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and

21   12(b)(6).  (Dkt. No. 14.)

22                    **I.    BACKGROUND**

23    Plaintiff's First Amended Complaint ("FAC"), filed as a matter of right,

24   asserts seven causes of action:  (1) violation of Federal Wiretap Act, 18 U.S.C. §

25   2511; (2) invasion of privacy; (3) intrusion upon seclusion under California

26   common law; (4) violation of California Invasion of Privacy Act ("CIPA"), Cal.

27   Pen. Code § 631(a); (5) violation of CIPA, Cal. Pen. Code § 638.51; (6) common

28   law fraud; and (7) unjust enrichment.  (Dkt. No. 12.)

## II.    STATEMENT OF THE LAW

### A.    Fed. R. Civ. P. 12(b)(2)

Fed. R. Civ. P. 12(b)(2) allows a court to dismiss a complaint for lack of personal jurisdiction.  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)); *see also Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014).  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d. at 800.  To show personal jurisdiction, "[t]he plaintiff need only make a prima facie showing of jurisdictional facts." *Id.*  "[F]or the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint will be taken as true. *Schwarzenegger*, 374 F.3d. at 800.

### B.    Fed. R. Civ. P. 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  On a motion to dismiss for failure to state a claim, courts accept as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008).  To survive a motion to dismiss, the complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A formulaic recitation of the elements of a cause of action will not suffice, and labels and conclusions are insufficient to meet the Plaintiff's obligation to provide the grounds of his or her entitlement to relief. *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  If a complaint cannot be cured by additional factual allegations, dismissal without leave to amend is proper. *Id.*  A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice in ruling on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### III.    DISCUSSION

**A.    Personal Jurisdiction**

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). California's long-arm jurisdictional statute permits the exercise of personal jurisdiction so long as it comports with federal due process.  *See* Cal. Civ. Proc. Code § 410.10; *Schwarzenegger*, 374 F.3d at 800-01; *Dole Food Co.*, 303 F.3d at 1110.  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks omitted)); *see also Walden*, 571 U.S. at 284.  Under the minimum contacts test, jurisdiction can be either general or specific. *Schwarzenegger*, 374 F.3d at 801-02.

### (1)    General Jurisdiction

"For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state." *Marvix Photo, Inc. v. Brand Techs., Inc.*, 674 F.3d 1218, 1223-24 (9th Cir. 2011). "For a corporate defendant, general jurisdiction is paradigmatically appropriate in the state in which the entity is incorporated or where it maintains its principal place of business." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023) (citing *Daimler*, 571 U.S. at 137). To exercise general jurisdiction over a corporate defendant that is not incorporated in California and does not maintain its principal place of business in California, a plaintiff must demonstrate an "exceptional case" exists where the corporation's "operations in another forum" outside of its place of incorporation and principal place of business is "so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *see also Schwarzenegger*, 374 F.3d at 800. Here, the FAC alleges "Defendant is a corporation incorporated under the laws of the State of Delaware" and Defendant "has represented that its principal place of business is the state of North Carolina." (FAC ¶ 7.)[1] Therefore, Defendant is not subject to general jurisdiction in California. *See Impossible Foods Inc.*, 80 F.4th at 1086; *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 571 U.S. at 139 n.19); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1777-78 (2017); *AM Trust v. UBS AG*, 681 Fed. App'x 587, 588 (9th Cir. 2017).

### (2)    Specific Jurisdiction

"Specific [personal] jurisdiction exists when a lawsuit arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). The Ninth Circuit "analyze[s] specific personal

---

[1] Plaintiff does not argue Defendant is subject to general jurisdiction in California.

jurisdiction under a three-part test:  (1) The non-resident defendant must

purposefully direct his activities or consummate some transaction with the forum

or resident thereof; or perform some act by which he purposefully avails himself

of the privilege of conducting activities in the forum, thereby invoking the benefits

and protections of its laws; (2) the claim must be one which arises out of or relates

to the defendant's forum-related activities; and (3) the exercise of jurisdiction must

comport with fair play and substantial justice, i.e. it must be reasonable." *Briskin*

*v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (citing *Schwarzenegger*,

374 F.3d at 797).  Plaintiff bears the burden of satisfying the first two prongs of

the test.  *Id*. (citation omitted).  If the plaintiff fails to meet her burden as to either

of these two prongs, "California courts lack specific personal jurisdiction."  *Id*.;

*see also Schwarzenegger*, 374 F.3d at 801.  If the plaintiff succeeds in satisfying

both of the first two prongs, the burden shifts to the defendant who must "present

a compelling case that the presence of some other considerations would render

jurisdiction unreasonable."  *Briskin*, 135 F.4th at 751 (citing *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 477 (1985)).

    **(a)    Purposeful Direction**

       The governing test for determining whether a defendant has purposefully

directed its actions toward the forum is the "*Calder* effects" test  which "requires

that the defendant (1) commit an intentional act,[2] that is (2) expressly aimed at the

forum state, and (3) which causes harm that the defendant knows will be suffered

in the forum state."  *Briskin*, 135 F.4th at 751 (citing *Calder v. Jones*, 465 U.S.

783 (1984)).  "This test does not require that the defendant be physically present

in the forum state, as 'it is an inescapable fact of modern commercial life that a

substantial amount of business is transacted solely by mail and wire

communications across state lines, thus obviating the need for physical presence

---

[2] Defendant does not argue the first prong of the *Calder* effects test regarding
committing an intentional act is not satisfied.

within a State in which business is conducted.'" *Id*. at 751-52 (quoting *Burger King*, 471 U.S. at 476). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id*. Here, Plaintiff asserts invasion of privacy and fraud claims sounding in tort, and therefore the *Calder* effects test for analyzing purposeful direction applies. *See id.* at 751; *Schwarzenegger*, 374 F.3d at 802; *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1263 (N.D. Cal. 2024); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1222 (C.D. Cal. 2024).

**(i)    Conduct Expressly Aimed at the Forum State**

Under the second prong of the *Calder* effects test, the Court must analyze whether Defendant expressly aimed its conduct at the forum state. "[A]n interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience[] for commercial gain." *Briskin*, 135 F.4th at 758 (internal quotations and citations omitted). "'[S]omething more' than mere passive nationwide accessibility [is] required to show express aiming at the forum state." *Id*. at 752. Here, Plaintiff alleges Defendant's Website is an interactive website (rather than a mere passive website) which sells amusement park tickets targeted at California residents, and Defendant's Website expressly refers to California residents and California privacy laws (*see* FAC ¶¶ 3, 10-17). The FAC therefore sufficiently alleges Defendant expressly aimed its conduct at California to satisfy the second prong of the *Calder* effects test because Defendant's alleged conduct was "targeted at a plaintiff whom the defendant kn[ew] to be a resident of the forum state" and the "geographic scope" of Defendant's "commercial ambitions" for its Website extended to California residents. *See Briskin*, 135 F.4th at 753-54, 756 (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011); *CollegeSource, Inc. v.*

*AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011)); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *8 (N.D. Cal. July 14, 2025) (citing *Briskin*, 135 F.4th at 758 n.17); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).

### (ii)    Conduct Which Caused Harm Defendant Knew Would Be Suffered in the Forum State

Under the third prong of the *Calder* effects test, the Court must analyze whether Defendant's conduct caused harm it knew was likely to be suffered in the forum state.  Here, the FAC alleges Defendant "engaged in intentional acts by operating its Website . . . causing both intangible injuries and economic harm to California residents that Defendant knew would be likely to be suffered in California," "Defendant falsely told Website users that it respected their privacy and that they could avoid tracking and data sharing when they browsed the Website," "[d]espite receiving notice of consumers' express declination of consent, Defendant defied it and violated state statutes, and tort duties," and "Defendant knew, or should have known, how the Website functioned, including the Third Party's resources it installed on the Website and the third-party cookies in use on the Website, through testing the Website, evaluating their performance metrics by means of its accounts with the Third Parties, or otherwise, and knew, or should have known, that the Website's programming allowed the third-party cookies to be placed on users'—including Plaintiff's—browsers and devices and/or transmitted to the Third Parties along with users' Private Communications even after users attempted to 'Deny Non-Essential' cookies, which Defendant promised its users they could do. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to use the Website."  (FAC ¶¶ 5, 11, 210.)  Accepting these allegations as true, the FAC sufficiently alleges Defendant's conduct caused harm Defendant knew was likely to be suffered in California to satisfy the third prong of

the *Calder* effects test.  *See Briskin*, 135 F.4th at 755-56 (citing *Will Co. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022), *overruled on other grounds by Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025)); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *7.

\*      \*      \*

Because each of the three prongs of the *Calder* effects test is satisfied, the Court finds Defendant purposefully directed its actions toward California.[3]

**(b)    Whether Plaintiff's Claims Arise Out of or Relate to Defendant's Forum-Related Activities**

Defendant argues because the FAC fails to plead facts showing Defendant had forum-related contacts based on its Website, Plaintiff's alleged injuries did not occur as a result of such contacts.  However, as discussed above, the Court finds Defendant purposefully directed its actions via its Website toward California, and

---

[3] Defendant relies on *Fregosa v. Mashable, Inc.*, 2025 WL 1083214, at *4 (N.D. Cal. Apr. 10, 2025) (finding "Fregosa fails to allege facts establishing that Mashable targeted California as a forum state, and not merely website users who may or may not have been California residents," and "[t]hat means that Fregosa has not adequately alleged that Mashable purposefully directed its conduct toward California, and exercising personal jurisdiction over Mashable would be improper."), and *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4, *6 (E.D. Cal. May 26, 2021) (holding "GM's operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction," relying on the fact there were no allegations that the defendant specifically targeted California through its website in finding lack of personal jurisdiction).  However, *Fregosa* and *Massie* are district court decisions decided prior to *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), wherein the Ninth Circuit expressly overruled "cases that require some sort of differential treatment of the forum state" for personal jurisdiction, reasoning "requiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents."  *Briskin*, 135 F.4th at 757-58 (noting "a company's internet activity may subject the company to specific personal jurisdiction in a given forum if the company 'knows—either actually or constructively' about its customer base there and 'exploits that base for commercial gain'") (citing *Mavrix Photo*, 647 F.3d at 1230-31).  Moreover, the Ninth Circuit in *Briskin* expressly upheld specific jurisdiction based on a "website's terms and conditions and legal compliance towards a United States-based audience" in *Will Co., Ltd. v. Lee*, 47 F.4th 917 (9th Cir. 2022).  *See id.* at 755 n.15.

8

Plaintiff's claims are based on privacy violations when consumers visited Defendant's Website and their data was collected without their consent. Therefore, Plaintiff's claims arise out of or relate to Defendant's forum-related activities.  *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *9.[4]

### (c)   Whether the Exercise of Jurisdiction is Reasonable

Because Plaintiff meets her burden of demonstrating Defendant purposefully directed is activities with California and Plaintiff's claims arise out of or relate to Defendant's forum-related activities, the burden shifts to Defendant to demonstrate the exercise of jurisdiction is not reasonable because it does not comport with fair play and substantial justice.  *Briskin*, 135 F.4th at 750-51; *Schwarzenegger*, 374 F.3d at 797; *Burger King*, 471 U.S. at 477.  Here, Defendant does not address whether the exercise of jurisdiction would be reasonable. Therefore, Defendant fails to satisfy its burden of demonstrating the exercise of jurisdiction over it would be unreasonable.

Accordingly, the Court exercises personal jurisdiction over Defendant.

### B.   Transfer

Defendant argues "[i]n the alternative to dismissal, . . . this case should be transferred to the Northern District of Ohio" "in the interest of justice" pursuant to 28 U.S.C. § 1631, which provides where the "court finds that there is ___***a want of***___

---

[4] Defendant cites *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 969 (C.D. Cal. 2023), and *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023), in support of its contention that Plaintiff's alleged harm does not arise out of or relate to Defendant's forum-related activities.  *Licea* and *Mikulsky* relied on the district court's decision in *Massie* requiring evidence that the defendant targeted California.  *See Licea*, 655 F. Supp. 3d at 969; *Mikulsky*, 682 F. Supp. 3d at 867. However, *Licea*, *Mikulsky,* and *Massie* are district court decisions decided prior to the Ninth Circuit's decision in *Briskin v. Shopify, Inc.*, 135 F.4th 739, 758 (9th Cir. 2025) (expressly overruling "cases that require some sort of differential treatment of the forum state" for personal jurisdiction, reasoning "requiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents").  Therefore, *Licea* and *Mikulsky* do not support finding a lack of jurisdiction over Defendant in this case.

***jurisdiction***, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." (Emphasis added.) Because the Court has jurisdiction over Defendant, 28 U.S.C. § 1631 does not apply. Therefore, the Court denies Defendant's request to transfer the action pursuant to 28 U.S.C. § 1631.

**C.    Failure to State a Claim**

Defendant also contends Plaintiff fails to state a claim as to each of the seven causes of action asserted.

**(1)    Federal Wiretap Act, 18 U.S.C. § 2511**

The FAC asserts a claim for violation of 18 U.S.C. § 2511(a) and (d) of the Federal Wiretap Act, which provides:

> [A]ny person who--
>
> **(a)** intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;[5] . . . [or]
>
> **(d)** intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . . .
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(a), (d).[6] Here, Defendant argues Plaintiff's Federal Wiretap Act claim fails because the FAC does not allege Defendant intercepted any "content"

---

[5] The Federal Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

[6] 18 U.S.C. § 2520 provides "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

information.

The Federal Wiretap Act defines "contents" "when used with respect to any wire, oral, or electronic communication" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). The Ninth Circuit has held "contents" for purposes of the Federal Wiretap Act means "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')," and "does not include 'record' information" such as the "name," "address," and "subscriber number or identify" of a subscriber or customer. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014). While the FAC alleges Defendant intercepted information which would fall within the category of record information such as the user's name, email address, and location (*see* FAC ¶ 25), the FAC also alleges Defendant's interception of "content" information such as Plaintiff's and Website users' personal information "including search queries," "products searched for," "user interests," and "browsing habits" (*see id.* ¶ 25). Therefore, the FAC sufficiently alleges Defendant transmitted "content" information as required to state a claim under the Federal Wiretap Act. *See In re Zynga Priv. Litig.*, 750 F.3d at 1108-09; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *Gabrielli v. Haleon*, 2025 WL 2494368, at *11 (N.D. Cal. Aug. 29, 2025); *Brown*, 685 F. Supp. 3d at 935-36; *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023); *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *7 (C.D. Cal. Dec. 16, 2024).

### (2)    Privacy Claims

The FAC asserts claims for intrusion upon seclusion under California common law and invasion of privacy in violation of the California Constitution. To state a claim for intrusion upon seclusion under California common law, Plaintiff must plead (1) Defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of

privacy[,]" and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *In re Facebook*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). To state a claim for invasion of privacy under the California Constitution, Plaintiff must allege: (1) Plaintiff possesses a legally protected privacy interest, (2) Plaintiff maintains a reasonable expectation of privacy, and (3) the intrusion is "so serious ... as to constitute an egregious breach of the social norms" such that the breach is "highly offensive." *Id.* (citing *Hernandez*, 47 Cal. 4th at 287). Defendant argues the FAC fails to state a claim for intrusion upon seclusion and invasion of privacy because Plaintiff does not allege highly sensitive data was collected that would give rise to a reasonable expectation of privacy.

The FAC alleges:

1. "[T]he third-party cookies stored on and/or loaded from users' devices when they interact with [Defendant's] Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant, including . . . information the user entered into the Website's form fields, including search queries" and "products searched for" (FAC ¶ 25);

2. Plaintiff "reasonably expected that . . . Defendant would not permit Third Parties to track and collect Plaintiff's Private Communications, including her browsing history, visit history, website interactions, user input data, demographic information, ***interests and preferences***, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, on the Website" (*id.* ¶ 153 (emphasis added)); and

3. Defendant "permit[ed] third-party cookies to be stored on consumers' devices, which enabled the Third Parties (and other third parties) to track and collect Plaintiff's Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, ***interests and preferences***, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" (*id.* ¶ 167 (emphasis added)).

Therefore, the FAC sufficiently pleads a reasonable expectation of privacy for

Plaintiff's invasion of privacy and intrusion upon seclusion claims.  *See In re Facebook*, 956 F.3d at 605-06.

Defendant argues even if Plaintiff has a privacy interest in her record information, disclosure of such record information is not highly offensive as required to state a claim for invasion of privacy and intrusion upon seclusion. Defendant's argument assumes the alleged information tracked and collected via Defendant's Website is non-actionable record information.  However, the FAC sufficiently alleges content information such as Plaintiff's search queries, interests, and preferences were tracked and collected via Defendant's Website (*see* supra), and the FAC's allegations that Plaintiff's content information was "surreptitiously" collected and tracked without her consent (*see* FAC ¶¶ 5, 25) are sufficient to survive Defendant's Motion to Dismiss on the issue of whether Plaintiff sufficiently pleads Defendant's actions were highly offensive. Moreover,"[t]he ultimate question of whether [Defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."  *In re Facebook*, 956 F.3d at 606.

Therefore, Plaintiff states a claim for intrusion upon seclusion and invasion of privacy.

**(3)    Cal. Pen. Code § 631(a)**

Cal. Pen. Code § 631(a) provides:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any ***telegraph or telephone*** wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal ***telephonic communication*** system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or ***who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the***

1

***acts or things mentioned above in this section***, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170.

2

3

4

(Emphasis added.)

5

Defendant argues the FAC fails to allege any eavesdropping occurred over a

6

telegraph or telephone wire, line, cable, or instrument and therefore the first clause

7

of Cal. Pen. Code § 631(a) does not apply here.  The plain language of the first

8

clause of Cal. Pen. Code § 631(a) expressly limits the scope of the statute to

9

"***telegraph or telephone*** wire, line, cable, or instrument, including the wire, line,

10

cable, or instrument of any internal ***telephonic communication*** system."

11

(Emphasis added.)  Here, the FAC alleges internet communications—not

12

telephonic communications.  Therefore, the first clause of Cal. Pen. Code § 631(a)

13

does not apply to Plaintiff's alleged internet communications which are the basis

14

for this action.  *See* Cal. Pen. Code § 631(a); *Gutierrez v. Converse Inc.*, 2025 WL

15

1895315, at *3 (9th Cir. July 9, 2025) (Bybee, concurring); *Ramos v. Gap, Inc.*,

16

2025 WL 2144837, at *3 (N.D. Cal. July 29, 2025).

17

However, the second clause of Cal. Pen. Code § 631(a) applies to internet

18

communications.[7]  *See* Cal. Pen. Code § 631(a); *Javier v. Assurance IQ, LLC*,

19

2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (citing Cal. Pen. Code § 631(a));

20

*Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *5 (D. Ariz. Jan. 28,

21

2025) (citing *Javier*, 2022 WL 1744107, at *1; *Licea v. Am. Eagle Outfitters, Inc.*,

22

659 F. Supp. 3d 1072, 1079 (C.D. Cal. 2023)).  Defendant argues it cannot be

23

liable under the second clause of Cal. Pen. Code § 631(a) under the "party

24

exception" which exempts an entity that is a "party to the communication" from

25

liability under Section 631.  *See In re Facebook,* , 956 F.3d at 607 (citing *Warden*

26

*v. Kahn*, 99 Cal. App. 3d 805, 811 (Cal. Ct. App. 1979)).  However, Cal. Pen.

27

28

[7] Defendant does not contend the second clause of Cal. Pen. Code § 631(a) only applies to telegraph or telephone communications.

14

Code § 631(a) also prohibits a person from aiding or conspiring with any person to tap a communication without consent.  *See* Cal. Pen. Code § 631(a).  Here the FAC alleges "Plaintiff expressly declined to allow Third Parties' (or other third parties') cookies and tracking technologies to access, intercept, read, learn, record, collect, and use Plaintiff's electronic communications by choosing 'Deny Non-Essential' cookies in [Defendant's] Website's cookie consent banner" (FAC ¶ 190), "Defendant surreptitiously enables several third parties – including Claritas (whose servers are trkn.us), Pinterest, and IPONWEB / Criteo (the "Third Parties") – to place and/or transmit cookies that track users' website browsing activities and eavesdrop on users' private communications on [Defendant's] Website" (*id*. ¶ 2), and "Defendant willfully aided, agreed with, employed, permitted, or otherwise enabled the Third Parties (and other third parties) to wiretap Plaintiff using the Third Parties' (and other third parties') cookies and to accomplish the wrongful conduct alleged herein" (*id*. ¶ 186).  Accordingly, the FAC sufficiently alleges Defendant aided third parties to tap Plaintiff's electronic communications.  *See Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 928 (C.D. Cal. 2025); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023).[8]

As to Defendant's contention that Plaintiff fails to allege the "contents" of a communication intercepted "in transit," the FAC alleges "third-party cookies stored on and/or loaded from users' devices when they interact with the Website

---

[8] Defendant contends the FAC does not include allegations of substantive communications to support an aiding or abetting claim against Defendant under Cal. Pen. Code § 631(a).  However, Cal. Pen. Code § 631(a) does not set forth an "abetting" standard.  Rather, Section 631(a) expressly provides for liability for any person "who ***aids, agrees with, employs, or conspires with*** any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."  Cal. Pen. Code § 631(a) (emphasis added).  *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 959 (E.D. Cal. 2025).

1   are transmitted to those third parties, enabling them to surreptitiously track ***in real***

2   ***time*** and collect Website users' personal information, such as their browsing

3   activities and private communications with Defendant, including" the users'

4   "search queries" and "products searched for" and without users' consent.  (*See*

5   FAC ¶¶ 5, 25.)  Therefore, the FAC sufficiently alleges Defendant aided third

6   parties in attempting to "read or to learn the contents" of Plaintiff's internet

7   communications in transit to state a claim for violation of Cal. Pen. Code § 631(a).

8   *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal.

9   2023); *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *7 (C.D. Cal. Dec.

10  16, 2024); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027

11  (C.D. Cal. 2023).

12      Accordingly, Plaintiff states a claim for violation of Cal. Pen. Code §

13  631(a).

14      **(4)    Cal. Pen. Code § 638.51**

15      Cal. Pen. Code § 638.51 provides "a person may not install or use a pen

16  register or a trap and trace device without first obtaining a court order."  A trap

17  and trace device is defined under Cal. Pen. Code § 638.50(c) as "a device or

18  process that captures the incoming electronic or other impulses that identify the

19  originating number or other dialing, routing, addressing, or signaling information

20  reasonably likely to identify the source of a wire or electronic communication, but

21  not the contents of a communication."  Defendant argues Plaintiff fails to state a

22  claim under Cal. Pen. Code § 638.51 because the tracking technologies alleged in

23  the FAC are not trap and trace devices.

24      Cal. Pen. Code § 638.51 prohibits the use of pen registers and trap and trace

25  devices, which are "device[s] or process[es]" that record or capture "dialing,

26  routing, addressing, or signaling information" from a "wire or electronic

27  communication," "but not the contents of a communication."  *See* Cal. Penal Code

28  §§ 638.50(b)–(c), 638.51.  To state a claim under Cal. Pen. Code § 638.51, a

plaintiff must allege a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d at 929 (citing Cal. Pen. Code § 638.51). The definition of "trap and trace device" set forth in Cal. Penal Code § 638.50 is not limited to telephone communications, but instead refers to "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of ***a wire or electronic communication***, but not the contents of a communication." (Emphasis added.) Therefore, based on the plain language of the statute, the Court finds Cal. Pen. Code § 638.51 is not limited to telephone communications and may apply to electronic communications such as internet communications. *See Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *12; *In re Meta Pixel Tax Filing Cases*, 2025 WL 2243615, at *6 (N.D. Cal. Aug. 6, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *12 (N.D. Cal. July 18, 2025); *Gabrielli v. Motorola Mobility LLC,* 2025 WL 1939957, at *11-12; *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d at 929; *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025).

Here, the FAC alleges "Defendant designed the Website to include resources and programming scripts from third parties that enable those parties to place cookies and other similar tracking technologies on visitors' browsers and devices and/or transmit cookies along with user data" and "Defendant, nonetheless, caused cookies, including the Third Parties' cookies, to be sent to

Plaintiff and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data" and "these third-party cookies permitted the Third Parties to track and collect data in real time regarding Website visitors' behaviors and communications including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data." (FAC ¶¶ 2, 3.) Therefore, Plaintiff sufficiently pleads Defendant's third-party website trackers are pen registers or trap and track devices to state a claim under Cal. Pen. Code § 638.51.

**(5)    Standing**

Defendant also argues Plaintiff lacks standing under Cal. Pen. Code § 637.2 to bring a private cause of action under Cal. Pen. Code §§ 631(a) and 638.51 because the FAC fails to allege facts about what data of Plaintiff's was collected or intercepted, if any. However, as discussed above, the FAC alleges Plaintiff's personal content information was tracked and collected, "including search queries," "products searched for," "user interests," and "browsing habits." (FAC ¶ 25.) Defendant also argues Plaintiff lacks standing because she fails to identify how she has been injured by Defendant's violations of Cal. Pen. Code § 631(a) or 638.51. However, the FAC sufficiently alleges Plaintiff was injured by Defendant's conduct based on violation of her right to privacy to establish standing. (*See* FAC ¶¶ 1, 124, 146, 152-53, 158-59, 163, 169, 172, 192.) *See In re Facebook*, 956 F.3d at 599; *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1192 (S.D. Cal. 2024).

**(6)    Unjust Enrichment**

Defendant moves to dismiss Plaintiff's unjust enrichment claim on the basis there is no independent cause of action for unjust enrichment in California, and the FAC fails to allege any nonspeculative "economic benefit" Plaintiff provided to Defendant, nor allege facts explaining how Defendant monetized Plaintiff's data

or information at her expense. A plaintiff may allege unjust enrichment as an independent cause of action under California law by alleging the defendant "received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Here, the Court construes Plaintiff's unjust enrichment claim as a quasi-contract claim seeking restitution. Moreover, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *In re Facebook*, 956 F.3d at 599; *see also Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *15; *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050-51 (N.D. Cal. 2018). Here, the FAC alleges:

1. "Defendant created and implemented a scheme to increase its own profits through a pervasive pattern of false statements and fraudulent omissions" (FAC ¶ 220);

2. "Defendant was unjustly enriched as a result of its wrongful conduct, including through its misrepresentation that users could 'Deny Non-Essential' cookies and by permitting the Third Parties to store and transmit cookies on Plaintiff's device and browser, which permitted the Third Parties to track and collect Plaintiff's Private Communications, including her browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, even after Plaintiff rejected such cookies" (*id.* ¶ 221);

3. "Plaintiff's Private Communications have conferred an economic benefit on Defendant" (*id.* ¶ 222);

4. "Defendant has been unjustly enriched at the expense of Plaintiff, and Defendant has unjustly retained the benefits of its unlawful and wrongful conduct" (*id.* ¶ 223);

5. "Defendant appreciated, recognized, and chose to accept the monetary benefits that Plaintiff conferred onto Defendant at her detriment. These benefits were the expected result of Defendant acting in its pecuniary interest at the expense of Plaintiff" (*id.* ¶ 224); and

6. "Plaintiff is entitled to restitution of the benefits Defendant unjustly retained and/or any amounts necessary to return Plaintiff to the position she occupied prior to having her Private Communications tracked and collected by the Third

19

Parties" (*id*. ¶ 227).

Plaintiff therefore pleads sufficient facts for disgorgement of any profits resulting from Defendant's alleged disclosure of Plaintiff's private information. *See Gabrielli v. Haleon*, 2025 WL 2494368, at *14.

**(7)    Fraud**

To plead fraud, a plaintiff must set forth facts showing (1) a misrepresentation or omission of material fact; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Gabrielli v. Haleon*, 2025 WL 2494368, at *12. Fed. R. Civ. P. 9(b) "requires that allegations of fraud be pleaded with particularity." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009). Defendant argues the FAC fails to plausibly plead a fraud claim and does not plead fraud with particularity as required under Fed. R. Civ. P. 9(b) because the FAC "generically implies that [Plaintiff] 'suffered an injury-in-fact, including the loss of money and/or property," from browsing through the Ceder Point Website – without more." However, as discussed above, Plaintiff pleads sufficient facts re: invasion of her right to privacy and sufficiently alleges injury by alleging "Plaintiff has suffered an injury-in-fact, including the loss of money and/or property, as a result of Defendant's unfair, deceptive, and/or unlawful practices, including the unauthorized interception of her Private Communications, including her browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, which have value as demonstrated by the use and sale of consumers' browsing activity." (FAC ¶ 212.) *See In re Facebook*, 956 F.3d at 599; *Gabrielli v. Haleon*, 2025 WL 2494368, at *1, *13.

Defendant also argues the FAC itself questions "what data, if any, is being sent to whom" (citing FAC ¶ 138), and contends such "vague speculation is not actionable." However, the FAC alleges the "third-party cookies stored on and/or

1   loaded from users' devices when they interest with the Website are transmitted to

2   those third parties, enabling them to surreptitiously track in real time and collect

3   Website users' personal information, such as their browsing activities and privacy

4   communications with Defendant," and includes a list of specific information

5   transmitted and tracked.  (FAC ¶ 25.)  The FAC also alleges the third parties

6   include "Claritas," "Pinterest, and IPONWEB / Criteo" and alleges Defendant

7   "surreptitiously enables" these "third parties . . . to place and/or transmit cookies

8   that track users' website browsing activities and eavesdrop on users' private

9   communications on the Website."  (*Id*. ¶ 2.)  Therefore, the FAC sufficiently

10  pleads what alleged data is being sent to whom for Plaintiff's fraud claim.

### IV.   CONCLUSION

12        Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's

13  First Amended Complaint.

14        **IT IS SO ORDERED.**

16  DATED:  December 15, 2025.

17                                        CONSUELO B. MARSHALL
                                          UNITED STATES DISTRICT JUDGE